1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SCOTT N. JOHNSON,

11            Plaintiff,                    No. CIV S-10-1955 WBS EFB

12        vs.

13   MATTHEW A. JOHNSON,

14            Defendant.                    FINDINGS AND RECOMMENDATIONS
     _____/

15

16        This case was referred to the undersigned pursuant to Eastern District of California Local

17   Rule 302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiff's motion for entry of default

18   judgment against defendant Matthew A. Johnson.[1]  Dckt. No. 15.  On April 27, 2011, a hearing

19   on the motion was held.  Plaintiff Scott Johnson, an attorney, appeared at the hearing and

20   represented himself.  No appearance was made on behalf of defendant.  For the reasons that

21   follow, and as stated on the record at the hearing, the court recommends that plaintiff's

22   application for entry of default judgment be granted.

23   ////

24

25        [1]  The motion also seeks default judgment against defendant James A. Dalton.  Dckt. No.
     15.  However, Dalton was dismissed from this action on March 24, 2011.  Dckt. No. 18.
26   Therefore, the portion of the motion seeking default judgment against Dalton is denied as moot.

                                           1

I.     BACKGROUND

Plaintiff initiated this action on July 22, 2010, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*., and the California Unruh Civil Rights Act.  Compl., Dckt. No. 1.  A certificate of service, filed October 29, 2010, demonstrates that the summons and complaint were served on defendant Johnson on October 1, 2010 in Gardnerville, California, by leaving a copy of the process at Johnson's usual place of abode with occupant Patricia Thomas, and informing her of its contents.  Dckt. No. 7.

On December 20, 2010, pursuant to plaintiff's request, the Clerk of Court entered the default of defendant Johnson.  Dckt. No. 11.  On February 23, 2011, plaintiff filed a motion for default judgment, and mail served a copy of the motion on defendant Johnson.  Dckt. No. 15.

Plaintiff's motion for default judgment seeks monetary damages, pursuant to California Civil Code Section 52(a) in the amount of $8,000.00, which is based upon two alleged discriminatory occurrences at the statutory minimum of $4,000.00 per discriminatory event.  *Id.* at 4.  Plaintiff also seeks an injunction requiring Johnson to provide the correct number and type of properly configured disabled parking space(s) including the lack of a van accessible disabled parking space, accessible route, accessible entrance, and accessibility signage and striping in accordance with the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act Accessibility Guidelines (ADAAG) contained in 28 CFR Part 36.[2]  *Id.*

II.    DISCUSSION

It is within the sound discretion of the district court to grant or deny an application for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

_____

[2] At the April 27 hearing, plaintiff indicated that he is no longer seeking an injunction regarding accessible store aisles because defendant Johnson is the property owner and the business on the property, South Lake Tahoe Antique & Thrift Company, has gone out of business.  Instead, plaintiff stated that the injunction he seeks relates to the parking lot on the property.  In light of plaintiff's representations, the undersigned also assumes that plaintiff no longer seeks an injunction requiring an accessible cashier/service counter, as provided in the motion for default judgment.

1    determination, the court considers the following factors:

2            (1) the possibility of prejudice to the plaintiff, (2) the merits of
             plaintiff's substantive claim, (3) the sufficiency of the complaint,
3            (4) the sum of money at stake in the action, (5) the possibility of a
             dispute concerning the material facts, (6) whether the default was
4            due to excusable neglect, and (7) the strong policy underlying the
             Federal Rules of Civil Procedure favoring decisions on the merits.
5

6    *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary

7    standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v.*

8    *Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v.*

9    *Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

10           As a general rule, once default is entered, the factual allegations of the complaint are

11   taken as true, except for those allegations relating to damages.  *TeleVideo Systems, Inc. v.*

12   *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted).  However, although well-

13   pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary

14   facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established

15   by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

16           A.      Americans with Disabilities Act

17           Title III of the ADA provides that "[n]o individual shall be discriminated against on the

18   basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

19   advantages, or accommodations of any place of public accommodation by any person who owns,

20   leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

21   Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . .

22   where such removal is readily achievable."  *Id.* § 12182(b)(2)(A)(iv).  Under the ADA, the term

23   readily achievable means "easily accomplishable and able to be carried out without much

24   difficulty or expense."  42 U.S.C. § 12181(9).

25           "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is

26   disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases,

1 or operates a place of public accommodation; and (3) the plaintiff was denied public

2 accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481

3 F.3d 724, 730 (9th Cir. 2007).  Further, "[t]o succeed on a ADA claim of discrimination on

4 account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1)

5 the existing facility at the defendant's place of business presents an architectural barrier

6 prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L &*

7 *L Drive-Inn Rest.*, 96 F. Supp.2d 1065, 1085 (D. Haw. 2000).

8   Although "[t]he Ninth Circuit has yet to rule on whether the plaintiff or defendant bears

9 the burden of proof in showing that removal of an architectural barrier is readily achievable," the

10 Circuit, and various district courts throughout the Circuit, have often applied the burden-shifting

11 framework set forth in *Colorado Cross Disability Coalition v. Hermanson Family, Ltd.*, 264 F.3d

12 999 (10th Cir. 2001).  *Vesecky v. Garick, Inc.*, 2008 WL 4446714, at *2 (D. Ariz. Sept. 30, 2008)

13 (citing *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1202 (9th Cir. 2007) and various district court

14 cases).[3]  In *Colorado Cross*, the Tenth Circuit stated that the "[p]laintiff bears the initial burden

15 of production to present evidence that a suggested method of barrier removal is readily

16 achievable" and that if plaintiff meets that burden, the burden shifts to the defendant, who "bears

17 the ultimate burden of persuasion regarding its affirmative defense that a suggested method of

18 barrier removal is not readily achievable."[4]  *Colo. Cross Disability Coal.*, 264 F.3d at 1006.

19

20   [3]  In *Vesecky*, 2008 WL 4446714, at *3, the district court stated that the Ninth Circuit "applied *Colo. Cross* without much discussion" in *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1202 (9th Cir. 2007) (per curiam), *withdrawn*, 524 F.3d 1034 (9th Cir. 2008).  Although the opinion in *Doran* cited by the district court in *Vesecky* was subsequently withdrawn and superseded on rehearing, the portion of the opinion relied on by the court in *Vesecky* was not altered in the later *Doran* opinion.  *See Doran v. 7-Eleven*, 524 F.3d 1034, 1047-48 (9th Cir. 2008).

23   [4]  Circuit courts that have applied a burden-shifting framework to determine whether a suggested method of barrier removal is readily achievable have disagreed about the quantum of evidence that a plaintiff must produce in order to meet his initial burden of production.  *Compare Colo. Cross Disability Coal.*, 264 F.3d at 1009 (requiring that plaintiff produce evidence, including evidence that a "specific design" is readily achievable and "precise cost estimates," to meet his initial burden of production), *with Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 & n.6 (2d Cir. 2008) (rejecting the *Colorado Cross* standard and requiring only that plaintiff articulate

1       Recently, in *Molski v. Foley Estates Vineyard and Winery, LLC*, 531 F.3d 1043 (9th Cir.

2  2008), the Circuit addressed *Colorado Cross* directly for the first time.  The court declined to

3  apply *Colorado Cross's* burden-shifting framework in the context of barrier removal from within

4  historic buildings and instead placed the burden squarely on the defendant.[5]  The court reasoned

5  that by requiring "the entity undertaking alterations [to] consult with the State Historic

6  Preservation Officer," the ADA guidelines for historic buildings place the burden on the "party

7  with the best access to information regarding the historical significance of the building" rather

8  than "on the party advocating for remedial measures."[6]  531 F.3d at 1048.

9       In *Vesecky*, a recent opinion addressing both *Colorado Cross* and *Molski*, the District of

10  Arizona stated that while it was "mindful of the informational imbalance that may exist between

11  plaintiffs and defendants with respect to the ease and cost with which architectural barriers may

12  be removed . . . until the Ninth Circuit provides additional and specific instruction to the lower

13  courts [it] will follow the overwhelming majority of federal courts that apply the burden-shifting

14  framework of *Colo. Cross*, specifically in cases where a historic building is not at issue."

15  *Vesecky*, 2008 WL 4446714, at \*2.  This court agrees, especially in the context of a default

16  judgment proceeding in which defendants have not appeared.  42 U.S.C. § 12181(9).

17

18  a "plausible proposal for barrier removal").  The undersigned need not address this difference in
the case law on plaintiff's motion for default judgment, where the allegations in the operative

19  complaint are, as a general matter, taken as true.

20     [5] Although the Ninth Circuit declined to apply the *Colorado Cross* burden-shifting
framework in *Molski*, it has favorably cited *Colorado Cross* elsewhere.  In *Lentini v. California*

21  *Center for the Arts*, 370 F.3d 837, 845 (9th Cir. 2004), the Court of Appeals cited *Colorado*
*Cross* for the proposition that whether a modification order will "fundamentally alter" a service

22  or facility under Title III of the ADA is an affirmative defense.  The *Colorado Cross* court
supported its holding that the whether removal of an architectural barrier is readily achievable

23  under Title III of the ADA is an affirmative defense, and its resulting application of a burden-
shifting test, by analogizing to the affirmative defense under the ADA's fundamental alteration

24  provision.  264 F.3d at 1003-04.  The *Lentini* decision at least suggests that the Ninth Circuit is
not altogether hostile to the reasoning that gave rise to the *Colorado Cross* burden-shifting test.

25

26     [6] The court also stated that "congressional intent behind the ADA support[s] placing the
burden of production on the defendant."  531 F.3d at 1048.

1    Here, plaintiff alleges (1) that he is disabled, Compl. ¶ 1; (2) that defendant's business is

2  a place of public accommodation, *id.* ¶ 2; (3) that plaintiff was denied access to defendant's

3  business because of plaintiff's disability, *id.* ¶ 3; and (4) that defendant's business has

4  architectural barriers, *id.*  Additionally, although plaintiff does not *specifically* allege that

5  removal of those barriers is readily achievable, he alleges that "[a] failure to remove architectural

6  barriers and communication barriers that are structural in nature, in existing facilities [is a

7  violation of the ADA] where such removal is readily achievable," *id.* ¶ 16 (emphasis added), and

8  his complaint also specifically states that he seeks injunctive relief "to remove all barriers to

9  access which are readily achievable. . . ." *Id.* ¶ 3.  Further, plaintiff's complaint alleges that

10  "[t]he acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights

11  under the ADA, Public Law 101-336, and the regulations promulgated thereunder, 28 CFR Part

12  36ff," *id.* ¶ 16, and that defendant has "continued to violate the law and deny the rights of

13  Plaintiff and of other disabled persons to access this public accommodation since on or before

14  July 22, 2010," *id.* ¶ 18, which implies that defendant has failed to remove barriers where the

15  removal is readily achievable.

16    Additionally, the injunction plaintiff seeks only requires defendant Johnson to provide

17  the correct number and type of properly configured disabled parking space(s) including the lack

18  of a van accessible disabled parking space, accessible route, accessible entrance, and

19  accessibility signage and striping "in accordance with the Americans with Disabilities Act of

20  1990 (ADA) and the Americans with Disabilities Act Accessibility Guidelines (ADAAG)

21  contained in 28 CFR Part 36."   Therefore, defendant Johnson would only need to comply with

22  that injunction if it is readily achievable to do so.[7]

23  
_____

24    [7] Moreover, 28 CFR § 36.304(b) specifically lists "Creating designated accessible
parking spaces," "Installing ramps," and "Making curb cuts in sidewalks and entrances," as
examples of "steps to remove barriers."  Also, § 36.304(c) provides that: "A public
25  accommodation is urged to take measures to comply with the barrier removal requirements of
this section in accordance with the following order of priorities. (1) First, a public
26  accommodation should take measures to provide access to a place of public accommodation

1    Because plaintiff's allegations are taken as true on default, the court finds that plaintiff

2    has met his initial burden to state a *prima facie* Title III discrimination claim.  Additionally, the

3    court finds that the majority of the *Eitel* factors weigh in favor of granting default judgment to

4    plaintiff on that claim.  Therefore, the undersigned recommends that plaintiff be granted default

5    judgment against defendant Johnson on his ADA claim and award plaintiff an injunction

6    requiring defendant Johnson to provide the correct number and type of properly configured

7    disabled parking space(s) including the lack of a van accessible disabled parking space,

8    accessible route, accessible entrance, and accessibility signage and striping in accordance with

9    the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act

10   Accessibility Guidelines (ADAAG) contained in 28 CFR Part 36.  *See* 42 U.S.C. § 12188(a)(2)

11   (authorizing injunctions under the ADA).

12       B.    Unruh Civil Rights Act

13       The Unruh Civil Rights Act provides:  "All persons within the jurisdiction of this state

14   are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin,

15   disability, medical condition, marital status, or sexual orientation are entitled to the full and

16   equal accommodations, advantages, facilities, privileges, or services in all business

17   establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  To prevail on his disability

18   discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that (1) he was

19   denied the full and equal accommodations, advantages, facilities, privileges, or services in a

20   business establishment; (2) his disability was a motivating factor for this denial; (3) defendants

21   denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services;

22   and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm.

23   Cal. Civil Jury Instructions (BAJI), No. 7.92 (Fall 2009 Revision).  Additionally, any violation

24   of the ADA necessarily constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code

25   _____

26   from public sidewalks, parking, or public transportation.  These measures include, for example,
     installing an entrance ramp, widening entrances, and providing accessible parking spaces."

1   § 51(f); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664 (2009).

2           Here, because plaintiff's complaint properly sets out the necessary elements for his ADA

3   claim against defendant Johnson, plaintiff has also properly set out the necessary elements for

4   his Unruh Civil Rights Act claim.  Therefore, and because there are no policy considerations

5   which preclude the entry of default judgment on this claim, *Eitel*, 782 F.2d at 1471-72, the court

6   will recommend that plaintiff's motion for default judgment on his Unruh Civil Rights Act claim

7   against defendant Johnson be granted.

8           The Unruh Civil Rights Act provides for a minimum statutory damage amount of $4,000

9   per violation, and "any attorney's fees that may be determined by the court in addition thereto."

10  *Id.* § 52(a).  Plaintiff seeks $8,000 in damages for violation of the Unruh Civil Rights Act, based

11  on two actual visits to defendant's property.  Dckt. No. 15 at 4.  The court will recommend that

12  plaintiff be awarded those statutory damages.

13  III.    <u>CONCLUSION</u>

14          Based on the foregoing findings, IT IS HEREBY RECOMMENDED that:

15          1.  Plaintiff's motion for default judgment against defendant Matthew Johnson be

16  GRANTED;

17          2.  Plaintiff be awarded statutory damages in the amount of $8,000;

18          3.  Plaintiff be granted an injunction requiring defendant Johnson to provide the correct

19  number and type of properly configured disabled parking space(s) including the lack of a van

20  accessible disabled parking space, accessible route, accessible entrance, and accessibility signage

21  and striping in accordance with the Americans with Disabilities Act of 1990 (ADA) and the

22  Americans with Disabilities Act Accessibility Guidelines (ADAAG) contained in 28 CFR Part

23  36; and

24          4.  The Clerk of Court be directed to close this case.

25          These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE